UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Dustin J. Iacovazzi, | : | Case No. 5:23-00682-MJC |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

## I. INTRODUCTION

Presently before the Court is Kubota Credit Corporation, U.S.A.'s Motion for an Order Extending Time to Object to Discharge Pursuant to Fed. R. Bankr. P. 4004(b)(2) on the grounds that recently discovered facts could rise to an action under 11 U.S.C. §727(d).[1] The Debtor, Dustin J. Iacovazzi ("Debtor"), through his counsel, objected to the Motion for an Order Extending Time to Object to Discharge Pursuant to Fed. R. Bankr. P. 4004(b)(2) and argues that the Kubota Credit Corporation, U.S.A. ("Kubota") did not meet the standard for extending the time to object.

For the reasons stated below, the Motion for an Order Extending Time to Object to Discharge Pursuant to Fed. R. Bankr. P. 4004(b)(2) is **DENIED**.

## II. PROCEDURAL POSTURE

All parties are familiar with the procedural history relating to this bankruptcy case and it requires no review herein. On October 29, 2025, Kubota filed a Motion for an Order Extending Time to Object to Discharge Pursuant to Fed. R. Bankr. P. 4004(b)(2), Doc. 131 ("Motion"). On November 18, 2025, the Debtor filed an Objection to the Motion, Doc. 132 ("Objection"). On January 7, 2026, Kubota filed a Reply in Support of the Motion ("Reply") which included

---

[1] Unless otherwise noted, all further statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Affidavits by both Counsel for Kubota and Gary Steen, Loss Mitigation Supervisor, for Kubota. Doc. 136. On January 12, 2026, the Debtor filed a Memorandum in Support of his Objection. Doc. 137. A hearing was held on January 15, 2025 ("January 15 Hearing").[2] The Court took the matter under advisement and this matter is now ripe for disposition.

## III. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The pending matter is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(j). Venue is proper pursuant to 28 U.S.C. §1409(a).

## IV. FACTS[3]

Prior to the petition date, the Debtor entered into multiple contracts with Kubota, both in his personal capacity and in his capacity as an officer of Mr. Mowitall Property Management, LLC ("Mowitall"). Doc. 131, p. 1-4. The Debtor, in his personal capacity, entered into a Retail Installment Contract ("RIC"), No. 579, for several pieces of Kubota equipment on October 7, 2019. *Id.* at p. 1. Later, the Debtor, again in his personal capacity, entered into a RIC for equipment, RIC No. 777. *Id.* at p. 3. Throughout 2020 and 2021 the Debtor, in his capacity as an officer of Mowitall and as a personal guarantor, entered into additional RICs with Kubota for the purchase of equipment, specifically RIC Nos. 634, 295, 313, and 237. *Id.* at p. 2-3. On or about April 9, 2021, Mowitall changed the name of the business to DGS Limited.[4] *Id.* at p. 3.

---

[2] The parties did not present any witnesses at the hearing, counsel made arguments, and the parties agreed to admit the Affidavits of Keri P. Ebeck, Counsel for Kubota, and Gary Steen, Loss Mitigation Supervisor for Kubota. Doc. 136, Exhibits 1 and 2.

[3] This Memorandum constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is made applicable to this proceeding under Fed. R. Bankr. P. 9014.

[4] It is implied, though never stated outright, that "DGS" in DGS Limited stands for DirtGrassSnow which is referenced through the remainder of Kubota's Motion.

2

Debtor filed a Chapter 13 bankruptcy case on March 30, 2023. Doc. 1. The deadline to object to the discharge was set for July 7, 2023. Doc. 6. On Schedule B, Debtor listed the business, Mr. Mowitall d/b/a DirtGrassSnow. Doc. 28, p. 5. Mr. Mowitall d/b/a DirtGrassSnow was also listed on the SOFA, Line 27. *Id*. at 45. Kubota concedes that it was aware of the Debtor's relationship with Mowitall at the time of filing. Doc. 136, p. 6.

On April 28, 2023, Kubota filed a claim for $15,112.70, with pre-petition arrears of $3,826.87, representing the balance due on RIC No. 579. Doc. 78. On September 28, 2023, Kubota filed an objection to confirmation on the grounds that Debtor failed to treat the claim in the Chapter 13 Plan. *Id*. Following the objection to confirmation, Kubota and Debtor communicated regarding the outstanding debt and the collateral. Doc. 136-1, Ex.1. During these negotiations, Kubota discovered that the Debtor was no longer in possession of the collateral securing RIC No. 579. *Id*. Debtor advised Kubota that the property had been sold but did not recall the amount received or to whom the property was sold. *Id*. Ultimately, Debtor and Kubota resolved the Objection to Confirmation. *Id*. Per the terms of the resolution, Debtor agreed to pay the secured claim of Kubota in full and Kubota agreed to not initiate an adversary proceeding for conversion. *Id*. Debtor's Chapter 13 Plan was confirmed on January 5, 2024. Doc. 103.

On or about June 2025, Kubota received a "tip" from a dealer that Debtor's stepbrother, Ryan Matylewicz ("Matylewicz"), may be in possession of Kubota's collateral. Doc. 136-4. Ex. 2. Based upon the dealer's tip, Kubota began an investigation of all contracts involving Debtor personally, Mowitall, and Matylewicz. *Id*. Kubota, upon a search of its internal records, discovered the additional RICs of Debtor and Mowitall, that had been previously charged off as bad debt. *Id*.[5]

---

[5] Per the records provided by Kubota, RIC Nos 634, 313, 237, and 777 were charged off as bad debt prior to the filing of the bankruptcy case. Doc. 136, Ex. 2, Ex A-G.

3

Kubota also discovered several related transactions involving entities with ties to the Debtor. Winola Excavation ("Winola"), a company owned by Matylewicz, had purchased several pieces of Kubota collateral. *Id*. On or about October 6, 2021, Winola paid DirtGrassSnow $21,400.00 for various pieces of equipment.[6] Doc. 131, Ex. 2 p. 4, Ex G. On November 17, 2021, Winola paid Debtor, personally, $18,346.00 for another piece of Kubota equipment. *Id*. at p.4, Ex. H. On November 7, 2022, Adam David Jones ("Jones") entered into RIC No. 118 with Kubota for equipment in his capacity as an Officer for SnoPro, Inc ("SnoPro").[7] *Id*. at p. 4. SnoPro operates at the same property as Winola, which is owned by Matylewicz. On July 31, 2023, Winola purchased a piece of Kubota equipment from SnoPro for $55,218.69. *Id*. at p. 4, Ex. J. The pre-petition transfers were not listed on the Statement of Financial Affairs in Debtor's case.[8] Gary Steen, Loss Mitigation Supervisor for Kubota, stated in his declaration that Kubota was not aware of the additional RICs associated with the Debtor or any of the aforementioned transfers of Kubota collateral prior to the dealer tip and subsequent investigation. Doc. 136-4, Ex. 2. Kubota believes these transfers of Kubota's collateral, both before and during the bankruptcy case were for the purposes of concealment.

## V. ANALYSIS

### A. <u>Legal Standard</u>

Fed. R. Bankr. P. 4004(b)(2) ("Rule 4004(b)(2)") governs extensions of time to object to discharge where the deadline for objecting to discharge has already passed. The rule states:

---

[6] Winola had a prior operating address of 1243 Blue Berry Road, Falls, PA, the same registered address as Mowitall. Doc. 136-4, Ex. 2. Winola is also the owner of the fictitious name DirtGrassSnow. *Id*.

[7] Debtor lists SnoPro as his employer on Schedule I of the Bankruptcy Petition. Doc. 28.

[8] Of these transfers, only one purports to pay Debtor directly. Counsel for Debtor asserted that because these transfers were not made by the Debtor personally it was not required that they be listed on the Statement of Financial Affairs. Counsel for Kubota did not dispute that assertion. Audio of January 15 Hearing at 10:56-10:57 A.M.

> (2) After the time to object has expired and before a discharge is granted, a party in interest may file a motion to extend the time if:
> (A) the objection is based on facts that, if learned after the discharge is granted, would provide a basis for revocation under §727(d);
> (B) the movant did not know those facts in time to object; and
> (C) the movant files the motion promptly after learning about them.

Fed. R. Bankr. P. 4004(b)(2). The mere filing of a motion under Rule 4004(b)(2) is insufficient to grant relief. *In Re Mauz*, 513 B.R 273, 279 (Bankr. M.D. Pa. 2013). In order to prevail on a Rule 4004(b)(2) motion the moving party must demonstrate:

> (1) cause exists to extend the time to object to discharge; (2) the proposed objection to discharge is based on facts that, had they been discovered after discharge, would provide a basis for revocation under section 727(d) of the Code; (3) the facts were not known prior to the time for objection had expired; and (4) the motion seeking an extension was filed promptly after discovery of the facts.

*In Re Bressler*, 601 B.R. 318, 330 (Bankr. S.D.N.Y. 2019) (*citing In Re Lusane*, 2013 WL 1728990, at *1 (Bankr. D.D.C. 2013)).

Courts have held that "implicit in Rule 4004(b)(2) 'is the requirement that a party seeking relief by asserting that it first learned of debtor's fraud during the gap period, demonstrate some degree of diligence in investigating the debtor's financial affairs prior to the expiration of the deadline for objecting to discharge.'" *Id*. (*quoting 421 Chestnut Partners, LP, et al. v. Aloia (In re Aloia)*, 496 B.R. 366, 385 (Bankr. E.D. Pa. 2013)); *see also Lusane*, 2013 WL 1728990, at *2 (finding that determinations of cause under Rule 4004(b) includes consideration as to whether a requesting party exercised diligence). Whether the moving party has met that burden is purely within the court's discretion. *Bressler*, 601 B.R. at 330; *Lusane*, 2013 WL 1728990, at *2; *In re Nowinski*, 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003); *In re Aloia*, 496 B.R. at 385; *In re Marsh*, 2012 WL 4482581, at *3 (Bankr. D. Mont. Sept. 2012). However, if the moving party has met their burden, the court should permit the extension of the deadline "absent any compelling reason to the contrary." *Bressler*, 601 B.R. at 331.

5

Meeting the requirement of Rule 4004(b)(2) by possession of facts that form the basis for its complaint establishes a *prima facie* case for cause. *Id*. at 331. However, a precursor to a "cause" analysis under Rule 4004(b)(2) is the due diligence requirement. The Court in *In Re Berger* held that "[c]ause for an extension does not exist when a creditor, who has notice of the bankruptcy case and filing deadlines, fails to diligently pursue discovery prior to expiration of those deadlines." *In Re Berger*, 2012 WL 2254324, at *4 (Bankr. N.N.D. 2012). While pursuing an extension under Rule 4004(b)(2) contemplates that the moving party has obtained new information following the deadline to object to discharge it does not exempt the creditor from pursuing their investigative duties into the debtor's financial affairs *prior* to the discharge. *In re Mauz*, 513 B.R. 273 at 279; *In Re Marsh*, 2012 WL 4482581 at *3 (denying extension request where trustee did not offer any evidence of her due diligence); *In Re Chatkhan*, 455 B.R. 365 (Bankr. E.D.N.Y. 2011) (denying motion where no showing that the creditor sought any form of discovery or that debtor failed to cooperate with creditor). The moving party must demonstrate due diligence was conducted prior to the discharge objection deadline or their motion fails. *In Re Chatkhan*, 455 B.R. at 368.

The due diligence requirement is intertwined with the second element requiring a showing of facts that, had they been known prior to the discharge objection deadline, would have provided a basis for revocation under Section 727(d). *Bressler*, 601 B.R. at 330. The relevant portion of Section 727(d) for the case herein is:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—(1) such discharge was obtained through the fraud of the debtor, and the requesting party *did not know of such fraud* until after the granting of such discharge.

*Id*. (emphasis added).

The standard for a showing of fraud under Section 727(d)(1) is that "a requesting party must establish actual fraud and that the fraud would provide grounds to deny a discharge, had it been timely known. In other words 'the discharge would not have been granted but for the fraud alleged.'" *Bressler* at 331 (*citing* 6 Collier on Bankruptcy ¶ 727.17 (16th ed. 2019)). Importantly, the burden to obtain information to demonstrate fraud under Section 727(d)(1) rests with the creditor. *Aloia*, 496 B.R. 381 (citing *Smith v. Seferian*, 2011 WL 6753989, at *3 (N.D.Ill 2011)).

The third requirement in a Rule 4004(b)(2) analysis is that the moving party not have known the facts underlying the fraud until after the time to object to discharge had passed. *Bressler*, 601 B.R. at 333. This requirement draws directly from Section 727(d)(1) requiring that the moving party did not know of the fraud prior to the granting of a discharge. *See* 11 U.S.C. 727(d)(1). This portion of the statute has been interpreted to mean "a moving party had no actual knowledge of the fraud and also no knowledge of facts that indicate a *possible* fraud prior to discharge." *Id*. at 333 (citing *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991) (finding that a majority of courts have held that notice of a possible fraud prior to discharge is sufficient to deny a request to revoke a discharge)). If the moving party was on notice of a potential fraud prior to the discharge deadline, it is precluded from seeking revocation of the discharge. *Smith v. Seferian*, 2011 WL 6753989, at *3.

The final prong of the Rule 4004(b)(2) standard is timeliness of the Motion. Once a party has knowledge of facts surrounding a fraud, the party should move "promptly" for relief under Rule 4004(b)(2). *Bressler*, 601 B.R. at 333.

### B. <u>The Motion to Extend the Time to Object to Discharge</u>

The Court finds that Kubota has not met its burden of demonstrating cause for an extension of the deadline to object to discharge. While the Court finds that Kubota *may* have presented facts

7

that could arise to a revocation of discharge under Section 727(d), Kubota failed to conduct reasonable due diligence and investigation into the financial affairs of the Debtor prior to the deadline to object to discharge. Further, Kubota had actual knowledge of the possibility of fraud prior to the discharge objection deadline. As such, Kubota cannot prevail on its Motion.

Here, Kubota was notified of the bankruptcy filing, listed as a creditor on Schedule D of the bankruptcy petition, timely filed a claim in the case, Claim 10-1, and objected to the confirmation of the Second Amended Chapter 13 plan. Docs. 1, 28, 78. Prior to confirmation of the case, Kubota actively negotiated with the Debtor to resolve its objection, was advised of a previously undisclosed sale, and was prepared to file an adversary proceeding in the event there was no resolution of the objection. Doc. 136-1, Ex. 1.

For reasons that were not adequately addressed by Kubota, missing collateral did not prompt Kubota to pursue a deeper, more full investigation of this Debtor. Upon being questioned during the January 15 hearing regarding what, if any, due diligence was conducted by Kubota prior to the deadline, counsel for Kubota advised that she was unsure what due diligence could have been conducted to discover these transfers. Audio of January 15 Hearing, 11:01 A.M. Instead, Kubota rested on its claim there was no means to discover that the Debtor was either the signor or guarantor on additional RICs because those contracts had been charged off as bad debt prior to the filing of the bankruptcy case. Doc. 136, p. 9. Kubota attests that these accounts would not be "actively monitored" and even if such monitoring occurred, the transfers could not have been discovered from these internal records. *Id*. at 9-10. However, records involving this Debtor appear to have been available to Kubota. Had Kubota exercised even a modicum of effort in the review

8

of its records, these additional accounts would have been revealed and any ensuing, and timely, discovery could have revealed the transfers.[9]

It is difficult for this Court to view the due diligence in this case as reasonable where Kubota, upon discovering that a Debtor had sold their collateral, would not immediately do a complete record search, inclusive of accounts that were not "actively monitored." Instead, seemingly doubling down on a lack of obligation to investigate, Gary Steen attests that "[r]eviewing these charged-off accounts would not have revealed the Debtor's fraudulent connections—such as familial ties to transferees or undisclosed sales—because the accounts did not cross-reference the Debtor's personal bankruptcy or the Debtor's hidden entity web." Doc. 136-4, Ex. 2. The Court finds it troubling that Kubota is suggesting a cursory review of internal records to be too much to ask of a creditor simply because that review would not represent all pieces of the puzzle.[10] Upon receiving notice of a customer's bankruptcy creditors should conduct a thorough review of their records prior to the discharge objection deadline. *Aloia*, 496 B.R. at 381; *Smith*, 2011 WL 675989 at *3; *In Re Marsh*, 2012 WL 4482581 at *3; *In re Bomarito*, 448

---

[9] It is unclear from the affidavits and the record of the January 15 hearing what due diligence was actually conducted by Kubota prior to the discharge objection deadline. The affidavits do not state, with any specificity, the type of diligence procedures that Kubota takes upon the filing of a bankruptcy case, nor was a witness available to testify as to the due diligence process exercised by Kubota. Doc. 136-1, Affidavit of Keri P. Ebeck, Doc. 136-4, Affidavit of Gary Steen, Audio of January 15 Hearing, 11:01-11:04 A.M. When questioned with regard to the due diligence conducted, counsel for Kubota did not provide any clear processes that Kubota follows, she simply stated she didn't know what due diligence her client could be expected to undertake upon receipt of the filing and expressed, "I don't think it's reasonable to ask my client to do that level of diligence to see if the equipment has been sold. These entities and the Debtor were not paying for the equipment. I think their level of diligence was maybe to proceed in state court but that is their right." Audio of January 15 Hearing, 11:02-11:03 A.M. When questioned with regard to whether Kubota conducted routine collateral inspections, counsel advised that Kubota, and other companies of their size, did not perform those types of inspections. *Id*. at 11:02- 11:03 AM.

[10] Like in *Chatkhan*, Kubota is alleging fraud as a basis for revocation of discharge but offers no evidence that the Debtor's alleged fraud impeded their ability to conduct an investigation, request discovery, timely request an extension of time to object to discharge, or file an objection to discharge. *Chatkhan*, 455 B.R. at 368. The Court in *Chatkhan* held that while allegations of fraud, if proven, may be sufficient to deny a discharge, those allegations are not "cause" to grant an extension of time to object to discharge. *Id*.

B.R. 242, 251 (Bankr. E.D. Cal. 2011). It appears that a review of charged off accounts would have revealed additional relationships with the Debtor.[11] The Court finds that Kubota failed to show that it had been diligent prior to the objection deadline. *Aloia*, 496 B.R. at 385; *Lusane*, 2013 WL 178990, at *2. Accordingly, Kubota has not met its burden of providing evidence of reasonable due diligence prior to the discharge to support its claim for a Rule 4004(b)(2) deadline extension.

In addition to the failure of Kubota to conduct proper due diligence, the Court further finds that Kubota had actual knowledge of the possibility of fraud prior to the discharge objection deadline. Pursuant to *Bressler*, the moving party must not have actual knowledge of a fraud or *possible* fraud prior to the objection deadline. *Bressler*, 601 B.R. at 333; *Mauz*, 513 B.R. at 279-281 (emphasis added). Here, Kubota was aware of the Debtor's ownership of Mowitall and was advised that Debtor had sold other collateral to an unknown party for an unknown sum. Despite having that knowledge Kubota did not conduct additional investigation and resolved an objection to confirmation by agreeing to not file an adversary proceeding. Doc. 136-1, Ex. 1. Kubota now moves to be permitted to conduct this investigation thirty-two (32) months into the case despite having been aware that the Debtor had previously engaged in possible fraudulent transfers in August 2023, when this Motion could have been deemed meritorious. Kubota failed to conduct even the barest of investigation of their internal records despite actual knowledge that Debtor had

---

[11] The Court found the facts in this case similar to *In re Marsh*, 2012 WL 4482581 (Bankr. D.Mont. 2012). In *Marsh*, the Court found that the "Trustee did not offer even a scintilla of evidence at the hearing in support of her Motion. She also did not establish a reasonable degree of due diligence to be accorded the requested extension." *Id*. at 3. Kubota has taken a similar approach to supporting their request for extension in this matter and appears to assume these types of Motions should be permissively granted despite case law not supporting such an assumption. *In Re Mauz*, 513 B.R. at 279. ("In light of the importance of the bankruptcy discharge…it is important to require objecting creditors to diligently and promptly either assert an objection or move to extend the discharge deadlines.")

previously sold their collateral to an undisclosed third party. This information certainly constitutes knowledge of the *possibility* of fraud contemplated by Rule 4004(b)(2). *Bressler*, 601 B.R. at 333.

The Court finds that the Kubota has failed to meet its burden demonstrating cause for an extension of the deadline to object to discharge. For all the reasons stated, the Motion is **DENIED**.

An Order consistent with this Memorandum shall be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: February 2, 2026